# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE GRANTON, | : | No. 3:15cv904 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Cohn) |
| NANCY A. BERRYHILL,[1] | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is Magistrate Judge Gerald B. Cohn's report and recommendation (hereinafter "R&R"). (Doc. 22). The R&R proposes denying Plaintiff Dwayne Granton's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "SSA") decision denying his application for supplemental

---

[1] When plaintiff filed this action, Carolyn W. Colvin was the Commissioner of Social Security. Accordingly, plaintiff named her as the defendant in her official capacity. Since then, however, Colvin left her position as Commissioner. Nancy A. Berryhill became the Acting Commissioner of Social Security on February 14, 2013. See OFFICIAL SOCIAL SECURITY WEBSITE, http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last accessed March 24, 2017).

Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

security income (hereinafter "SSI").[2]  Plaintiff filed objections to the R&R

(Doc. 23), and they are ripe for disposition.

**Background**

On August 1, 2011, plaintiff filed a protective application[3] for SSI due

to bipolar, anxiety disorder, panic disorder, depression, and a learning

disorder.  (Doc. 10, Admin. Record (hereinafter "R.") at 34; 250-58; 321).[4]

Originally, plaintiff alleged that his disability began on July 1, 2011.  (R. at

250).  He later amended his disability onset date to October 28, 2011.  (R.

at 211).  On January 5, 2012, the SSA denied plaintiff's application.  (R. at

113-17).  Plaintiff then filed a request for a hearing before an administrative

law judge (hereinafter "ALJ").  (R. at 121-23).

---

[2]  SSI is a federal income supplement program funded by general tax revenues (not social security taxes).  42 U.S.C. § 1381.  It is designed to help the aged, blind, or disabled individuals who have little or no income. 42 U.S.C. § 1381a.  Insured status is irrelevant in determining a claimant's eligibility for SSI benefits.  42 U.S.C. § 1382.

[3]  "Protective filing" is a term describing the first time an individual contacts the Social Security Administration to file a claim for benefits.  See 20 C.F.R. § 416.340; see also Soc. Sec. Admin. Program Operations Manual Sys., GN 00204.010.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.  20 C.F.R. § 416.340.

[4]  References to "R. at __" are to pages of the administrative record filed by the defendant as part of his answer on July 6, 2015.

The ALJ held hearings on May 2, 2013, and November 20, 2013. Plaintiff testified via telephone that he was born June 3, 1977, and obtained a GED in 1997. (R. at 37, 41). He worked as a cleaner for Imperial Commercial Cleaning. (R. at 40, 43). Since July of 2011, he worked sporadically for Labor Group, Performance Group, and Stop and Shop. (R. at 44, 54-55). Plaintiff has been incarcerated at least three times for convictions of robbery, weapons possession, and retail left. (R. at 37-39).

As mentioned above, plaintiff has alleged a disability onset date of October 28, 2011, for mental health issues. (R. at 211). Plaintiff testified that he received no inpatient hospitalization for mental health limitations since October of 2011. (R. at 45). Additionally, he received no intensive outpatient treatment for mental health. (R. at 45-46). Plaintiff also testified, however, that he lived in a mental health unit while incarcerated because he is unhappy, sad, not functioning, and endures panic attacks. (R. at 62-64). Plaintiff testified he is unable to work because he "was told in a work environment that [he] was not able to keep up and perform the work properly . . . ." (R. at 53). Stated differently, he testified that his supervisors would not let him work because he "wasn't able to perform to their standard." (R. at 53; 60-61).

In a decision issued on November 27, 2013, the ALJ denied plaintiff's claims, finding that plaintiff is not disabled. (R. at 8-30). Plaintiff requested that the SSA Appeals Council review the ALJ's decision, but the Appeals Council denied plaintiff's request on March 9, 2015. (R. at 1-5). Thus, the ALJ's decision stood as the Commissioner's final decision.[5]

As a result of the Commissioner's denial of SSI, plaintiff filed an appeal to this court on May 7, 2015.[6] The Clerk of Court assigned plaintiff's appeal to Magistrate Judge Gerald B. Cohn, and on February 14, 2017, Magistrate Judge Cohn recommended that plaintiff's appeal be denied on grounds that substantial evidence supports the ALJ's decision. (Doc. 22). Plaintiff filed timely objections to the R&R (Doc. 23), and they are ripe for disposition.

---

[5] The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within sixty (60) days after receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981.

[6] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir.

1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision.  See, 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own

conclusion for those of the fact-finder); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo</u>, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Plummer</u>, 186 F.3d at 429 (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner

must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates SSI claims with a five-step sequential analysis.  20 C.F.R. § 416.920(a)(4).  This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of

impairments, that is severe;[7] (3) has an impairment or combination of

impairments that meets or equals the requirements of a "listed impairment";

(4) has the "residual functional capacity" to return to his or her past work;

and (5) if not, whether he or she can perform other work in the national

economy.  20 C.F.R. § 416.920(a)(4)(i)-(v).

    In applying the five-step sequential analysis in the instant case, the

ALJ found at Step 1 that plaintiff had not engaged in substantial gainful

activity since October 28, 2011.  (R. at 13).  At Step 2, she found that

---

[7]  A "severe impairment" significantly limits a claimant's physical or mental
ability to perform basic work activities.  20 C.F.R. § 416.920(c).  Basic
physical work activities include the ability to walk, stand, sit, lift, carry, push,
pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.921(b).  An
individual's basic mental or non-exertional abilities include the ability to
understand, carry out and remember simple instructions, and respond
appropriately to supervision, coworkers and work pressures.  20 C.F.R.
§ 416.921(b).
    The determination of whether a claimant has any severe impairment
that has lasted or is expected to last for a continuous period of at least
twelve (12) months, at step two of the sequential evaluation process, is a
threshold test.  20 C.F.R. §§ 404.1509, 404.1520(c) & 416.920(c).  If a
claimant does not have any severe impairment or combination of
impairments which significantly limits her physical or mental abilities to
perform basic work activities that has lasted or is expected to last for a
continuous period of at least twelve (12) months, the claimant is "not
disabled" and the evaluation process ends at step two.  20 C.F.R.
§§ 404.1509, 404.1520(c) & 416.920(c).
    If a claimant has any severe impairments, the evaluation process
continues.  20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g).  Furthermore,
all medically determinable impairments, severe and non-severe, are
considered in the subsequent steps of the sequential evaluation process.
20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 & 416.945(a)(2).

plaintiff has the following severe impairments: affective disorder; anxiety-related disorder; history of borderline intellectual functioning; personality disorder; polysubstance abuse disorder; and status-post gunshot wound to the abdomen.  (R. at 13-14).  At Step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 14-18).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to

> perform light work . . . with the following additional restrictions: requires regular breaks, defined as a ten to fifteen minute break midway through the first half of the shift, a similar break midway through the second half of the shift, a twenty to thirty minute break halfway through the shift, and one or two five to ten minute unscheduled restroom or drink breaks; use of bilateral hand/arm levers or cranks limited to occasionally; climbing stairs limited to occasionally; avoid altogether climbing ladders, ropes, scaffolding, or poles as part of the work; stooping, kneeling, crouching or squatting limited to occasionally; avoid altogether crawling on hands and knees or feet as part of the work; avoid concentrated exposure to extreme cold; avoid altogether work around or with vibrating objects or surfaces; no work around drugs, alcohol, or prescription drugs; limited to simple duties that can be learned on the job in a short period of time and that are consistent with occupations having no GED value greater than one; avoid altogether required direction interaction, not just contact, with the general public as part of the work; no more than occasional required direct interaction,

> not just contact, with coworkers as part of the work; and
> avoid work at a production rate pace that requires
> constant pushing or pulling of materials.

(R. at 118-23).  The ALJ then proceeded to Step 4 of the sequential

evaluation and received testimony from an impartial vocational expert

(hereinafter "VE").

The VE testified that plaintiff could no longer work as a cleaner.  (R.

at 74-75).  Based on this testimony and a finding that the non-exertional

demands of plaintiff's past work exceed the RFC, the ALJ found at Step 4

that plaintiff is unable to perform any past relevant work.  (R. at 23).

Finally, at Step 5, the ALJ determined that plaintiff could still perform

other work that exists in significant numbers in the national economy.  (R.

at 24-25).  Specifically, the ALJ found that plaintiff could work as a bakery

worker, bakery racker, binder/machine feeder/offbearer, or poultry

eviscerator.  (R. at 24).  Because the ALJ concluded that plaintiff is capable

of making a successful adjustment to other work, she determined that

plaintiff is not disabled.  (R. at 25).

The Clerk of Court assigned plaintiff's appeal to Magistrate Judge

Gerald B. Cohn for a report and recommendation.  Magistrate Judge Cohn

recommends denying plaintiff's appeal and upholding the SSA's decision

denying plaintiff's SSI claim. (Doc. 22). Plaintiff filed objections to the R&R (Doc. 23), and they are ripe for disposition.

Plaintiff's objections raise the following three issues: (1) the Magistrate Judge erred in finding that substantial evidence supports the ALJ's credibility determination; (2) the Magistrate Judge failed to properly evaluate the consultative opinion of plaintiff's psychologist; and (3) the Magistrate Judge erred in determining that plaintiff failed to meet Listings 12.04 and 12.06. We address these issues in turn.

## I. The ALJ's Credibility Determination

Plaintiff first contends that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's credibility determination. The Magistrate Judge recommends affirming the ALJ's credibility determination, explaining that no credible medical evidence supports plaintiff's subjective complaints. After a careful review, with agree with the Magistrate Judge.

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999) (citation omitted). "If objective medical evidence fails to substantiate the severity of the claimant's pain or symptoms, then the ALJ must make a credibility finding regarding the claimant's subjective statements." Weidman v. Colvin, 164 F.Supp.3d 650, 656 (M.D. Pa. 2015)

(citing Social Security Ruling (hereinafter "SSR") 96-7p).  "An ALJ's credibility finding with respect to the severity of a claimant's symptoms requires consideration of the entire record." Id. (citing SSR 96-7p).  More specifically, the ALJ must consider the following seven factors, in totality: (1) claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (6) any measures claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

In the instant matter, plaintiff argues that the Magistrate Judge erred when considering the fifth factor, the treatment plaintiff received. Specifically, plaintiff argues that the Magistrate Judge failed to explain how plaintiff's conservative treatment supports the ALJ's finding that plaintiff's subjective complaints were not credible.  Stated differently, plaintiff contends that conservative treatment does not imply a lack of a disabling

limitation, and therefore, the ALJ erred by relying on plaintiff's conservative treatment when making her credibility determination.  We disagree.

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence.  Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999); Dobrowolsky v. Califano, 505 F.2d 403, 409 (3d Cir. 1979).  A claimant's subjective complaints "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."  Orndorff v. Colvin, — F.3d —, 2016 WL 1450172, at *7 (M.D. Pa. Apr. 13, 2016) (quoting SSR 96-7p).

Here, to the extent that plaintiff argues that the Magistrate Judge erred by relying on plaintiff's conservative treatment in assessing plaintiff's credibility, we find no error.  As this court has explained, "[a] finding that a claimant received only conservative treatment is an appropriate consideration in assessing credibility regarding disabling pain."  Skapely v. Colvin, No. 3:15-cv-1065, 2015 WL 7351583, at *12 (M.D. Pa. Nov. 30, 2015) (citing Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008)).

Additionally, substantial evidence supports the ALJ's credibility determination, as no medical evidence supports plaintiff's allegations regarding the intensity, persistence, and limiting effects of his impairments.

Specifically, plaintiff never consistently treated for his alleged mental health symptoms, he regularly denied mental health symptoms, he reported only minor disorders, and he presented with minimal findings upon examination. (R. at 438-527; 622-674; 675-792).

As mentioned above, plaintiff's treatment of his alleged symptoms is only one of seven factors requiring the ALJ's consideration. <u>See</u> 20 C.F.R. § 416.929(c)(3). Plaintiff, however, challenges no other factor addressed by the ALJ, and therefore, his objection to the R&R with respect to this issue will be overruled.

## II. Evaluation of Plaintiff's Consultative Psychologist's Opinion

Plaintiff next contends that the Magistrate Judge erred in assigning "lesser weight" to the consultative opinion of plaintiff's psychologist, Barry B. Hart, Ph.D. (hereinafter "Dr. Hart"). We disagree.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments. 20 C.F.R. § 416.927(a)(1). "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion." 20 C.F.R. § 416.927(a)(3). "Generally, the more

consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion." 20 C.F.R. § 416.927(a)(4).

In the instant matter, the ALJ found the opinion of plaintiff's consultative psychologist, Dr. Hart, to be "internally inconsistent." (R. at 22-23). Specifically, Dr. Hart calculated plaintiff's Global Assessment of Functioning (hereinafter "GAF") score to be 55-60, which the ALJ concluded "suggests no more than moderate symptoms or functional loss[.]" (R. at 22). Dr. Hart's GAF calculation, explained the ALJ,

> is in opposite to the marked functional abilities noted in the function-by-function assessment and Dr. Hart failed to clarify the inconsistency in these opinions in his report. . . . Dr. Hart did not have any outside records available for his review at the time this opinion was rendered. This is particularly important as [Plaintiff] subjectively reported extensive symptoms and a personal history that is obviously inconsistent with that reported elsewhere in the records, and similarly presented upon mental status examination with findings no[t] present upon any other objective examination[.]

(R. at 22).

Additionally, the ALJ found that Dr. Hart relied extensively on plaintiff's subjective complaints rather than objective clinical findings. In particular, Dr. Hart notes that plaintiff reported problems with short-term memory, impulse control based on a "history of fighting[,]" and being "fired on a number of occasions for losing his temper and having a bad attitude."

16

(R. at 533).  Plaintiff's subjective complaints, however, are inconsistent with his own reports elsewhere in the record, as he regularly denied mental health symptoms, reported only minor disorders, and presented with minimal findings upon examination.  (R. at 438-527; 622-674; 675-792).

The Third Circuit Court of Appeals has explained that the "mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."  Morris v. Barnhart, 78 F. App'x 820, 824 (3d Cir. 2003); see also 20 C.F.R. § 416.908 (explaining that a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms).  Here, plaintiff's subjective complaints are at odds with the medical evidence established elsewhere in the record.  Because Dr. Hart extensively relied on plaintiff's subjective complaints in his consultative psychological report, the ALJ committed no error in assigning it "lesser weight."

For these reasons, substantial evidence supports the ALJ's assignment of "lesser weight" to Dr. Hart's opinion.  Plaintiff's objection to the R&R with respect to this issue will thus be overruled.

### III. Listings 12.04 and 12.06

Finally, plaintiffs contends that the Magistrate Judge erred in finding that plaintiff did not meet Listings 12.04 and 12.06.  Specifically, plaintiff avers that substantial evidence establishes that he suffered: (1) a marked impairment in maintaining social functioning; and (2) marked difficulties in maintaining concentration, persistence, or pace.  After a careful review, we agree with the Magistrate Judge that plaintiff did not meet Listings 12.04 and 12.06.

"To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies **all of the criteria in the listing**."  20 C.F.R. § 404.1525(d) (emphasis added).  As the Third Circuit has summarized:

> For a claimant to show that his impairment matches a
> listing, it must meet **all** of the specified medical criteria.
> An impairment that manifests only some of those criteria,
> no matter how severely, does not qualify. For a claimant
> to qualify for benefits by showing that his unlisted
> impairment, or combination of impairments, is 'equivalent'
> to a listed impairment, he must present medical findings
> equal in severity to **all** the criteria for the one most similar
> listed impairment.

Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original) (internal quotation marks and citations omitted)).  Thus, if a claimant fails to satisfy

one element of the listed criteria, substantial evidence will support the ALJ's determination that the claimant does not meet a Listing.  See id.

In the instant matter, plaintiff contends that he has: (1) a social functioning impairment that meets Listing 12.04; and (2) a concentration, persistence, or pace impairment that meets Listing 12.06.  We address plaintiff's contentions in turn.

First, plaintiff contends that he has a social functioning impairment that meets Listing 11.04.  Under the law applicable at the time of the ALJ's decision, "social functioning" refers to:

> [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  [The claimant] may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.  [The claimant] may exhibit strength in social functioning by such things as [his or her] ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities.  We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity.  Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function. For example, if [the claimant is] highly antagonistic, uncooperative, or hostile but [is] tolerated by local storekeepers, we may nevertheless find that [the claimant has] a marked limitation in social functioning because that behavior is not acceptable in other social contexts.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00C2.

Here, the ALJ found that plaintiff has only moderate difficulties in social functioning, and therefore, does not meet Listing 12.04. (R. at 16). Specifically, the ALJ explained:

[T]he claimant was admittedly able to independently and appropriately attend to his personal care, prepare meals, complete household tasks, use public transportation, and handle money and manage his finances, suggestive of no more than moderate restriction in activities of daily living despite extensive mental health complaints (Exhibits 4E and 11E, Testimony). Similarly, although the claimant alleges social isolation and difficulty getting along with authority figures friends, family members, and neighbors, he was admittedly able to leave his home unaccompanied as needed, live and interact with others without reported difficulty, and use public transportation, all of which suggest at least some degree of retained functionality in this domain (*Id.*).

(R. at 16). The ALJ also noted that plaintiff reported mental health symptoms and poor functioning on examination only when he presented for his consultative examination connected with his SSI application. Indeed, past medical evidence indicates that plaintiff denied mental health

symptoms and reported only minor disorders, with objectively minimal findings on examination.  (R. at 438-527; 622-674; 675-792).  In particular, plaintiff admitted he can go out alone, live and interact with others without difficulty, and use public transportation.  (R. at 16; 335-339).  While incarcerated, he denied ever feeling so irritable that he found himself shouting at people or starting arguments.  (R. at 625).  Similarly, plaintiff's treatment providers, including Dr. Hart, indicated plaintiff's cooperative and controlled behavior.  (R. at 524, 531, 788, 792).

Additionally, the ALJ relied on the consultative psychological opinion of Helen Parshall, Ph.D., to determine that plaintiff did not meet Listing 12.04.  Dr. Parshall opined that plaintiff has moderate difficulties in maintaining social functioning.  (R. at 105).  Specifically, she determined that plaintiff's impairments "are of sufficient severity to warrant ongoing counseling, vocational training, and community support."  (R. 108).  These impairments, however, do "not result in marked or extreme functional limitations that would preclude engagement in simple routine work activities."  (R. at 108-09).  According to Dr. Parshall, plaintiff is still "able to function independently and complete simple chores."  (R. 108).  In particular, although plaintiff complains of social avoidance and a lack of trust with other people, he is nonetheless "independent with personal care,

prepares daily meals, and can pay bills when finances allow." (R. at 105).

Thus, Dr. Parshall concluded that plaintiff is "capable of simple, routine

work." (R. at 108).

Based on plaintiff's inconsistent medical history and Dr. Parshall's

medical opinion, we find that the record lacks evidence of a marked

limitation in social functioning. Rather, we agree with the Magistrate Judge

and find that substantial evidence supports the ALJ's determination that

plaintiff did not meet Listing 12.04. Plaintiff's objection to the R&R in this

regard will thus be overruled.

Second, plaintiff contends that he has a concentration, persistence,

or pace impairment that meets Listing 12.06. Under the law applicable at

the time of the ALJ's decision, "concentration, persistence, or pace" refers

to:

> [T]he ability to sustain focused attention and
> concentration sufficiently long to permit the timely and
> appropriate completion of tasks commonly found in work
> settings. Limitations in concentration, persistence, or
> pace are best observed in work settings, but may also be
> reflected by limitations in other settings. In addition,
> major limitations in this area can often be assessed
> through clinical examination or psychological testing.
> Wherever possible, however, a mental status examination
> or psychological test data should be supplemented by
> other available evidence.

> On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits.
>
> In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00C2. As with social functioning, a "marked" limitation in concentration, persistence, or pace is not defined by a specific number of tasks that the claimant is unable to complete, but by the nature and overall degree of interference with function. Id. For example, a claimant who is unable to sustain attention and persist in complex tasks, but is able to sustain attention and persist in simple tasks does not have a marked limitation. Id.

Here, the ALJ found that plaintiff has only moderate difficulties in concentration, persistence, and pace, and therefore, does not meet Listing 12.06. (R. at 16). Specifically, the ALJ explained:

> [D]espite [the claimant's] allegations of difficulty
> remembering, concentrating, sustaining attention,
> finishing what he starts, following written or oral
> instructions, handling stress, and handling changes in
> routine, the claimant admittedly retains adequate
> cognition and mentation to cook, use public transportation
> independently, and handle money and manage his own
> finances, suggestive of at least some degree of retained
> functionality in the area of concentration, persistence, or
> pace ([Exhibits 4E and 11E, Testimony]).

(R. at 16).  The ALJ also noted that plaintiff failed to provide any third-party

reporting that might corroborate his allegations of more debilitating mental

health disorders, and that the available medical evidence does not suggest

more than moderate limitations.  (R. at 16-17).  Despite these moderate

limitations, plaintiff's medical status examinations revealed that plaintiff had

average intelligence, fair insight, fair judgment, intact memory, and a

motivation for treatment.  (R. at 525).

Additionally, the ALJ again relied on the consultative psychological

opinion of Dr. Parshall to determine that plaintiff did not meet Listing 12.06.

Dr. Parshall opined that plaintiff has moderate difficulties in maintaining

concentration, persistence, and pace.  (R. at 105).  As mentioned above,

she determined that plaintiff's impairments "are of sufficient severity to

warrant ongoing counseling, vocational training, and community support."

(R. 108).  These impairments, however, do "not result in marked or extreme

functional limitations that would preclude engagement in simple routine

work activities." (R. at 108-09).  According to Dr. Parshall, plaintiff is still "able to function independently and complete simple chores." (R. 108).  In particular, although plaintiff's educational history indicates a "borderline to mild range of impairment[,]" he "completed his ADL questionnaire with reasonable level of competency suggesting, minimally, functional literacy capacities." (R. at 105).  Similarly, although plaintiff "is easily distracted[,]" he can still complete tasks.  (R. at 105).  During the examination, plaintiff presented as oriented with low average to borderline intelligence, and no particular mannerisms other than hypoactive behavior.  (R. at 108).  Thus, Dr. Parshall concluded that plaintiff is "capable of simple, routine work." (R. at 108).

Based on plaintiff's inconsistent medical history and Dr. Parshall's medical opinion, we find that the record lacks evidence of a marked limitation concentration, persistence, or pace.  Rather, we agree with the Magistrate Judge and find that substantial evidence supports the ALJ's determination that plaintiff did not meet Listing 12.06.  Plaintiff's objection to the R&R in this regard will thus be overruled.

**Conclusion**

For the above-stated reasons, we find that substantial evidence supports the ALJ's decision denying plaintiff's application for SSI.  Thus, we

will overrule plaintiff's objections, adopt the R&R, dismiss plaintiff's appeal, and close this case. An appropriate order follows.

**Date: <u>April 28, 2017</u>**          <u>**s/ James M. Munley**</u>
                                     **JUDGE JAMES M. MUNLEY**
                                     **United States District Court**